RODGERS ET AL. *v*. BOARD OF SUPERVISORS OF UNION COUNTY.

[75 South. 123, Division B.]

1. HIGHWAYS. *Road district. Issues of bonds. Statutes.*

Under Laws 1910, chapter 149, section 11, authorizing a county to levy and collect road taxes on the whole county, including the district created, but in case the district had constructed roads of stone, gravel, etc., or a combination of such material or material equally durable, such district should not be taxed for building such roads in other parts of the country or for the payment of principal and interest on county bonds thereafter issued for road purposes without the consent of a majority of the qualified electors of the district voting therefor and under Laws 1916, chapter 173, providing for the creation of a road district composed of a whole county and the issuance of bonds, where no such roads were constructed under the road Law of 1910, this provision of the Law of 1910 is not applicable, and does not prevent or interfere with the creation of a road district composed of the whole county under chapter 173, of the Laws of 1916, or make it necessary to order an election before issuing bonds thereunder.

2. COUNTIES. *Road districts. Issue of bonds. Order of supervisors.*

Under Laws 1916, chapter 173, section 1, expressly authorizing the board of supervisors of a county to issue bonds for road purposes, which added to outstanding bonded indebtedness shall not exceed ten per cent, the proceedings before the board of supervisors should recite in its order either what the assessed value shows and what the outstanding bonded indebtedness is, or it should recite and adjudge that the said issue would not exceed ten per cent, when added to the other bonded indebtedness of the county for road purposes.

3. COUNTIES. *Bonds. Injunction. Decree.*

In dissolving an injunction to prevent the issuance of county bonds under Laws 1916, chapter 173, where it appeared that the proposed issue made the bonded indebtedness of the county exceed the ten per cent authorized by the act, the order should have enjoined the issuance of more than the amount which the county was authorized to issue, as each bond proposed to be issued, must recite in its face that it is one of a series of a certain total issue of a given amount.

APPEAL from the chancery court of Union county.
HON. A. J. MCINTYRE, Chancellor.

Suit for injunction by J. L. S. Rodgers and others against the board of supervisors of Union county. From· an order dismissing an injunction, plaintiffs appeal.

The facts are fully stated in the opinion of the court.

*C. Lee Crum,* for appellants.

*L. K. Carlton,* for appellee.

ETHRIDGE, J., delivered the opinion of the·court..

This is an appeal from an order of the chancery court of Union county dissolving an injunction to prevent the issuance · of three hundred thousand dollars worth of county bonds under chapter 173, Laws 1916.

During the year 1910, after the passage of chapter 149, Laws 1910, the board of supervisors of Union county created a road district under said chapter, embracing districts Nos. 1, 2, and 3 of union county, and issued bonds to the amount of fifty thousand which was expended upon the roads of said road district in widening and grading and filling low, places with common earth. The total bond fund was expended in this work, and the commissioner had been discharged in said district, but said bonds and interest were outstanding and unpaid at the time of the order issuing the bonds sought to be enjoined in the present case. When the board published a notice to the voters of Union county of its purpose to issue bonds under chapter 173, Laws 1916; a protest signed by two hundred and twelve voters was filed protesting against the issuance of said road bonds, there being more than three thousand legal voters in Union county at the said time; consequently less than the number required to order an election petitioned for an election or made protest against the

issuance of the bonds, and the board proceeded to order the issuance of three hundred thousand dollars road bonds of the county without ordering an election in the road district created under chapter 149, Laws 1910, during the year 1910. The bill for an injunction alleges that under the law the road district had a right to construct roads of stone, slag, chert, gravel, or sand and clay, or a combination of said materials or of other material of equity durability, and it is contended that under section 11 of chapter 149, that the board could not issue the new, bonds without submitting the question to the electors of the district created in 1910 and obtaining a consent of the majority of such electors. The exhibits to the bill contain the orders of the board of supervisors, petitions, etc., constituting the proceedings before the board in each of the bond issues, and their answer was filed and a certificate from the chancery clerk showing the assessed value of property for the year 1916 in Union county and certain affidavits showing that there was no stone, chert, slag, gravel, or sand and clay roads constructed under the road district created in 1910, but that the roads were merely improved, widened, etc., by the use of natural earth without mixing in any proportion or according to any formula. In December, 1916, the board, in ordering notice of its intention to issue the bonds under chapter 173, recited that they would issue the bonds not to exceed ten per cent. of the assessed value of the taxable property of the county, including outstanding bonds. The notice given appears by an order of the board to have been irregular in some undisclosed particular, and new notice was ordered published of the board's intention to issue the bonds, and this newly published notice brought forth the protest of the two hundred and twelve qualified electors. Whereupon the board adjudged that the two hundred and twelve electors did not constitute the required percentage to order an election and proceeded to order the issuance of the three hun-

dred thousand dollar bonds of the county, but the order of the board does not recite what the assessed value of the property of the county was, nor does it recite what the outstanding bonds of the county were. But in the record appears a certificate from the chancery clerk which shows that the assessed value of the taxable property of the county for the year 1916 was three million eighty-four thousand seven hundred and ten dollars, and that the bonded indebtedness of the county, including the three hundred thousand dollars, was three hundred sixty-five thousand dollars; in other words, that outside of the three hundred thousand dollars proposed to be issued there was sixty-five thousand dollars county bonds outstanding. The chancellor dissolved the injunction, and no other relief having been prayed for, final decree was entered denying relief sought.

Section 11 of chapter 149, Laws 1910, reads as follows:

"Nothing in this act shall be taken to repeal any road laws of the state. Counties working the public road by contract or that may hereafter do so shall be authorized to levy and collect a road tax from the whole county including the districts electing to come under this act. Such portion of the proceeds of said tax as would have been necessary to work the roads in such districts had they not so elected, shall be subject to the control of the commissioners of said district to be used therein. But the districts separately taxed to pay principal and interest on bonds for building roads made of stone, gravel, chert, slag, or sand clay, or of a combination of such material or any material equally durable shall not be subject to an additional tax for building such roads in other parts of the county, or for the payment of principal and interest on any county bonds hereafter issued for road purposes, without the consent of a majority of the qualified electors of said district voting in an election held for that purpose. In counties working con-

victs on the public roads, such convicts shall be worked as far as practicable in cutting down hills and reducing the grade of roads where they will not be subject to frequent and unnecessary removals from one place to another.''

It will be seen from the above section that the county was authorized, under the law of 1910, to levy and collect road taxes of the whole county, including the district created, but provided that in case the district had constructed roads of the material of stone, gravel, chert, slag, or sand clay, or combination of such material or any material equally durable, such district should not be taxed for building such roads in other parts of the county, or for the payment of the principal and interest on any county bonds thereafter issued for road purposes without the consent of a majority of the qualified electors of said district voting therefor. Inasmuch as it appears from the record in this case that no such roads were constructed under the road law of 1910, this provision of the law of 1910 is not applicable, and does not prevent, or interfere with, the creation of a road dis-. trict composed of the whole county under chapter 173 of the Laws of 1916. Of course, the board will continue to levy the taxes for the payment of the principal and interest of that bond issue; but there was no necessity for ordering an election so far as this road district is concerned.

This is an appeal to get a construction of the road laws involved. There remains, in our view, one question to be settled, and that is whether the order dissolving the injunction was proper on the facts as they appear in the exhibit to the pleadings and in the record before the chancellor. The notice actually published to the taxpayers preceding the ordering of the issuance of the bonds sought to be enjoined does not appear in the record, but we take it that it is an exact copy of the order at the December meeting ordering notice to the taxpayers. The order of the board by which the bonds

were ordered issued and sold does not recite what the taxable value of the property of the county was, nor does it contain a recital that the three hundred thousand dollars did not exceed ten per cent. of the value of the property when added to the bonded indebtedness for road purposes of the county. The certificate of the chancery clerk appearing in the record as to the assessed value was perhaps introduced for the purpose of showing the correct taxable values as shown by the assessment roll for the preceding year and of the outstanding bond indebtedness for road purposes. If we consider this certificate as being a part of the proceedings before the board, it will appear that the issue of three hundred thousand dollars was excessive, for under this assessment only three hundred and eight thousand four hundred and seventy-one dollars of the bonds, including both outstanding and the proposed issue, could be issued. Section 1 of chapter 173 expressly provides that the board of supervisors is authorized and empowered to issue the bonds of the county in an amount which, added to its outstanding bonded indebtedness of such county, if such bonds are issued for the entire county for road purposes, shall not exceed ten per cent. of the assessed value of the taxable property of such county.

We think the proceedings before the board of supervisors should recite in its order either what the assessed value shows and what the outstanding bonded indebtedness is, or it should recite and adjudge that the said issue would not exceed ten per cent. when added to the other bonded indebtedness of the county for road purposes.

It appearing that the issue was in excess of the figures authorized when we consider the certificate of the chancery clerk as supplying recitals the board's order omits, it becomes manifest that the chancellor erred in dissolving the injunction. The order should have enjoined the issuance of more than the amount

which the county was authorized to issue, as each bond proposed to be issued must recite in its face that it is one of a series of a certain total issue of a given amount. We think the board should proceed under a new order to issue bonds in such amount as added to the outstanding bonds of the county for road purposes will not exceed ten per cent. of the assessed value. If the notice was given in the last publication to the voters of the county in conformity to the notice ordered published at the December, 1916, meeting, it would not be necessary to republish notice to the qualified voters, but the board could proceed to issue bonds in the proper amount on the notice already given. If the notice published did not give the information in this form, but was a notice to issue bonds in the sum of three hundred thousand dollars, a new notice should be published to the qualified electors and proceedings followed as indicated above. The case is therefore reversed and remanded.

*Reversed and remanded.*